1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  TAMI M. KRENZIN, State Bar No. 183925
   Supervising Deputy Attorney General
3  STEPHEN G. HERNDON, State Bar No. 130642
   Supervising Deputy Attorney General
4   1300 I Street, Suite 125
    P.O. Box 944255
5   Sacramento, CA 94244-2550
    Telephone:  (916) 210-7697
6   Fax:  (916) 324-2960
    E-mail:  Stephen.Herndon@doj.ca.gov
7  *Attorneys for Respondent*

8

                IN THE UNITED STATES DISTRICT COURT
9
              FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11

12

| | |
|---|---|
| **REGINALD BLOUNT,** | 2:15-cv-01809-KIM-AC |
| Petitioner, | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS** |
| **v.** | |
| **J. SOTO,** | |
| Respondent. | |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Per Order (Doc. 33) and Rule 5, R. Governing § 2254 Cases, Respondent as Warden of a

2  California Prison answers the Third Amended Petition for Writ of Habeas Corpus (Doc. 34, the

3  "Petition") as follows:

4    1.  Respondent has custody of Petitioner, a prisoner, pursuant to the December 14, 2012

5  judgment of the California Superior Court, Sacramento County, in case number 11F07200,

6  imposing a 35-year-to-life term for assault with a deadly weapon with two prior serious felony

7  convictions.

8    2.  It appears the petition was timely filed.  28 U.S.C. § 2244(d)(1)(A).

9    3.  Petitioner must prove exhaustion.  Claims decided by the California Court of Appeal and

10  timely renewed in a California Supreme Court petition for review are exhausted, if limited to the

11  appellate record.  Claims presented on state habeas are exhausted as articulated in the California

12  Supreme Court, if limited to the appellate record and competent evidence presented to that court.

13  Other claims are barred and on the merits may only be denied.  28 U.S.C. § 2254(b)(1), (2).

14    4.  Claims barred for improper state court presentation are barred here as well.  *Davila v.*

15  *Davis*, 137 S. Ct. 2058, 2064 (2017); *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

16    5.  On claims fairly presented to a state court, Petitioner fails to prove their rejection either

17  was not on the merits, or the merits rejection was objectively unreasonable.  28 U.S.C. § 2254(d).

18    6.  Separately, on all claims, the existence of a constitutional violation, rendering the

19  resulting custody illegal, would not have been "apparent to all reasonable jurists" based on the

20  law extant at the time the conviction became final on direct appeal.  *Beard v. Banks*, 542 U.S. 406,

21  413 (2004); *Teague v. Lane*, 489 U.S. 288 (1989).

22    7.  Petitioner thus shows no lawful basis to issue the writ under a system of review already

23  "secondary" and "limited" prior to 1996, *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983), and now

24  further "limited rather than expanded" under the Antiterrorism and Effective Death Penalty Act of

25  1996 (AEDPA), *Fry v. Pliler*, 551 U.S. 112, 119 (2007), and the Petition must be denied.

26    Respondent will lodge the non-miscellaneous state court documents as follows:

27

28    Direct Appeal

1

California Court of Appeal, No. C072742

    1.  Clerk's Transcript on Appeal ("CT"), vol. 1, pp. 1-300;

    2.  CT, vol. 2, pp. 301-418;

    3.  Supp. CT, vol. 1, pp. 1-34;

    4.  Reporter's Transcript on Appeal ("RT"), vol. 1, pp. 1-300;

    5.  RT, vol. 2, pp. 301-600;

    6.  RT, vol. 3, pp. 601-820;

    7.  Supp. RT, vol. 1, pp. 1-54;

    8.  Appellant's Opening Brief;

    9.  Respondent's Brief

    10.  Reply Brief;

    11.  Amended Abstract of Judgment;

    12.  Opinion;

California Supreme Court

    13.  Petition for Review;

    14.  Order denying Review;

State Habeas

California Superior Court, Sacramento County, No. 15HC00460

    15.  Petition for Writ of Habeas Corpus;

    16.  Order denying petition;

California Court of Appeal, No. C073295

    17.  Petition for Writ of Habeas Corpus;

    18.  Order denying petition;

California Court of Appeal, No. C073520

    19.  Petition for Writ of Habeas Corpus

    20.  Order denying petition;

/ / /

/ / /

2

1   California Court of Appeal, No. C080104

2        21. Petition for Writ of Habeas Corpus;

3        22. Order denying petition;

4   California Supreme Court, No. S209807

5        23. Petition for Review;

6        24. Docket, order denying review;

7   California Supreme Court, No. S238478

8        25. Petition for Writ of Habeas Corpus;

9        26. Order denying petition.

10                **MEMORANDUM OF POINTS AND AUTHORITIES**

11   **A.    Factual and Procedural Background**

12        A jury found defendant Reginald Blount guilty of assault with a deadly weapon
     and misdemeanor vandalism.  The jury sustained two prior conviction allegations and
13   the trial court found the priors were serious felonies and strikes.  The trial court
     sentenced defendant to 35 years to life.  On appeal, defendant contends the trial court
14   erroneously admitted prior uncharged misconduct evidence and he is entitled to
     additional conduct credits.  We shall affirm.
15
                              **FACTS**
16
17        On October 18, 2011, Avery Blount (Blount) was living with defendant (his
     father), his son, mother, and brother.  When he came home that day, there was an
18   outdoor barbecue for his birthday.  Among the attendees were his cousins David
     Beckhorn, Richard Harris, and Michael Plunkett.
19
          Defendant arrived at the party later in the evening.  He was angry and drunk
20   and started arguing with a neighbor named Chin.  Defendant yelled at Chin and
     threatened to "beat his ass."  He temporarily left the party; when he returned,
21   defendant continued to yell profanity at Chin.  Blount told defendant to stop swearing,
     but defendant ignored him.  Defendant got upset with Blount for taking sides and not
22   allowing him to fight Chin.

23        Defendant went into Blount's house several times, returning outside "yelling
     and cursing and throwing a bike in the middle of the street."  Defendant also
24   threatened Harris and swore at him.  Blount and his cousins went in his house with
     defendant and tried to calm him down, but were unsuccessful.  After Blount and his
25   cousins walked outside and said, "we quit," defendant came outside, ready to fight
     Blount.

26        Defendant told Blount he owed him for the last time.[1]  He put up his hands like
     he was going to fight Blount and then lunged at him.  Beckhorn tried to stop the
27   _____

28        [1] Testifying, Blount explained this was a reference to a fight he had with defendant in
                                                          (continued…)

                              3

1    attack by grabbing defendant's hands; defendant responded by choking Beckhorn.
     The two fell and Beckhorn struck his head on a television stand.

2
          After Blount pulled defendant off Beckhorn, defendant pushed out a window
3    and unsuccessfully tried to jump through it.  Plunkett said he was calling 911, which
     further enraged defendant.  As Blount, Harris, and Plunkett started to leave through
4    the front door, defendant grabbed a golf club and hit Beckhorn.  Beckhorn grabbed
     another golf club and tried to deflect the attack.  Defendant then chased them out of
5    the house as he was swinging the golf club.  Defendant ran into the garage and
     smashed out car windshields, including the one in Beckhorn's car.

6
          Neighbor Deanne Teel called 911 at 9:32 p.m.  She reported an argument, two
7    loud cracks, and a man wielding a weapon with several other people trying to calm
     him down.  A deputy arrived and encountered defendant, who was pacing, waving his
8    arms around, and smelled of alcohol.  Beckhorn was holding a bloody rag to his head.
     Defendant was arrested after a brief investigation.

9
          Defendant told a deputy he was angry at a neighbor and challenged him to a
10   fight.  The neighbor refused and defendant went home.  Blount and his cousins then
     confronted defendant about his behavior.  Beckhorn pushed him several times, so
11   defendant "took [him] down."  Blount and Beckhorn started punching defendant and
     pushed him into a window.  Defendant first said no one had a golf club, but later
12   claimed Beckhorn hit him with a golf club.  He denied having a golf club or smashing
     the windshield to Beckhorn's car, claiming he only defended himself from their
13   attacks.

14   (Doc. 12, pp. 1-3.)

15       **B.    Legal Standards**

16       28 U.S.C. § 2241 gives a federal court power to grant a habeas writ to a person "in custody

17   in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3);

18   *see Felker v. Turpin*, 518 U.S. 651, 661 (1996).  But if the person's custody is pursuant to a state

19   court judgment, § 2241's grant is "limited by § 2254," *Felker*, 518 U.S. at 662, and case law.

20           **1.    Subject-Matter Limit in 28 U.S.C. § 2254(a)**

21       28 U.S.C. § 2254(a) allows attacks only on custody, and only on federal law theories.

22   *Bailey v. Hill*, 599 F.3d 976, 981-84 (9th Cir. 2010).  Federal courts do not " 'reexamine state-

23   court determinations on state-law questions.' "  *Waddington v. Sarausad*, 555 U.S. 179, 192 n.5

24   _____

     (…continued)
     2007 when Blount was 16 or 17 and Blount's mother had kicked defendant out of the home.
25   After being thrown out, defendant kicked through a window, banged on a door, and entered the
     home.  Defendant took Blount's mother into the living room, argued with her, said he was going
26   to hurt her, and then lunged at her.  Blount took a bread knife from the dishwasher and hit
     defendant in the head.  Defendant threw several punches at Blount, striking Blount about six
27   times, and also threw a Crock-Pot and carpet cleaner at him.  The confrontation ended when the
     police arrived.  Defendant was convicted of criminal threats as a result of the incident.
28

                                           4

                   Answer to Petition for Writ of Habeas Corpus (2:15-cv-01809-KJM-AC)

1   (2009); *Dixon v. Williams*, 750 F.3d 1027, 1033 (9th Cir. 2014).  State law error is neither " 'a

2   denial of due process' " nor "the [federal judiciary's] business," *Swarthout v. Cooke*, 562 U.S.

3   216, 222 (2011) (per curiam); *see Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007) (en

4   banc), even if it "prejudiced the defendant," *Estelle v. McGuire*, 502 U.S. 62, 67 & 68 n.2 (1991).

5                    **2.    Anti-Retroactivity Limit in Case Law**

6          Novel theories will not do.  Illegality had to be "apparent to all reasonable jurists" when the

7   conviction became final.  *Beard v. Banks*, 542 U.S. at 413.  It is necessary, but not necessarily

8   sufficient, that a finding of illegality was dictated in a case "controlling" on the state court[2] or by

9   a "robust 'consensus of cases of persuasive authority.' " *Ashcroft v. al-Kidd*, 563 U.S. 731, 742

10  (2011).  Still, persuasive authority would not have put the issue beyond debate if other cases

11  arguably supported a contrary view, even if inconsistently.  *Lane v. Franks*, 134 S. Ct. 2369,

12  2382-83 (2014).  And even a case binding on the state court would not have put the issue beyond

13  debate if a "reasonable jurist . . . could have drawn a distinction" between that case and the

14  petitioner's case.  *O'Dell v. Netherland*, 521 U.S. 151, 165 (1997); *id.* at 159-60 (sufficient if

15  issue is " 'susceptible to debate among reasonable minds' "); *Wright v. West*, 505 U.S. 277, 291

16  (1992) (federal court " 'must defer to the state court's decision rejecting the claim unless that

17  decision is patently unreasonable' ").  Thus, even without AEDPA, the writ is barred "whenever

18  the state courts have interpreted old precedents reasonably"—and "not only when they have done

19  so 'properly.' " *West*, 505 U.S. at  291 n.8.

20                   **3.    Relief-Preclusion Limit in 28 U.S.C. § 2254(d)**

21         Cumulatively, extreme limits apply under AEDPA when a state prisoner fails to prove a

22  state court did not reach a claim's merits.  *Harrington v. Richter*, 562 U.S. 86, 100 (2011).  Such

23  limits presumptively bar a "grant of habeas relief," *Fry*, 551 U.S. at 119, even if a federal court

24  "discern[s] . . . a constitutional violation," *Crater v. Galaza*, 491 F.3d 1119, 1127 (9th Cir. 2007).

25  / / /

26  / / /

27         [2] That excludes circuit cases, which do not control state courts even on federal law issues.
    *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 58 n.11 (1997).

28

                                          5

### a.    General Bar

Specifically, 28 U.S.C. § 2254(d) bars relief on a "claim 'adjudicated on the merits' in state court," unless the state court decision (1) " 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1);" or (2) " 'involved an unreasonable application of' such law, § 2254(d)(1);" or (3) " 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Richter*, 562 U.S. at 98, 100. Absent one of these exceptions, "analysis is at an end" and "a writ of habeas corpus 'shall not be granted.' " *Cullen v. Pinholster*, 563 U.S. 170, 203 n.20 (2011).

### b.    Exceptions

#### (1)    Legal Unreasonableness Under 28 U.S.C. § 2254(d)(1)

##### (a)    Existence of a Clearly Established Legal Rule

28 U.S.C. § 2254(d)(1) demands that the Supreme Court have "established" a rule, and "clearly" so. The universe is limited to "holdings, as opposed to the dicta" of Supreme Court cases existing when the state court ruled. *Howes v. Fields*, 565 U.S. 499, 505 (2012). And a holding matters only if it " 'squarely addresses' the claim at issue and provides a 'clear answer.' " *Liao v. Junious*, 817 F.3d 678, 689 (9th Cir. 2016). It is not enough that petitioner's desired rule might be suggested; if the case's holding did not "squarely" establish that specific rule, the rule did not exist for review purposes. *Richter*, 562 U.S. at 101; *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

Moreover, that the Supreme Court clearly established a rule in no way implies the Court clearly established the content of that rule.[3] Prior to AEDPA, the Court explained that "clearly established" means a rule's content was so clear that no reasonable officials "could" have thought the act was "consistent with the rights they are alleged to have violated," *Anderson v. Creighton*,

---

[3] *E.g.*, *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 870 (2017) (holding the Constitution requires considering proffered evidence of juror's racial bias, but not deciding standard for granting relief); *and see Illinois v. Gates*, 462 U.S. 213, 241 (1983) ("no one doubts that 'under our Constitution only measures consistent with the Fourth Amendment may be employed by government to cure [the horrors of drug trafficking],' (citation); but this agreement does not advance the inquiry as to which measures are, and which measures are not, consistent with the Fourth Amendment").

1 483 U.S. 635, 638 (1987)—every reasonable official "would" have known a particular outcome

2 was required under the circumstances facing the official. *Id.* at 639-40. That longstanding view

3 of "clearly established law" at a minimum required that one "identify" a governing "case" in

4 which an official "was held to have violated" the law "under similar circumstances." *White v.*

5 *Pauly*, 137 S. Ct. 548, 552 (2017). It follows that when Congress deliberately included the

6 judicially-construed "clearly established" phrasing in 28 U.S.C. § 2254(d)(1), Congress intended

7 the same extreme bars to relief. *See Holland v. Florida*, 560 U.S. 631, 646 (2010) (finding intent

8 to incorporate judicial construction regarding equitable tolling) (citing *Merck & Co. v. Reynolds*,

9 559 U.S. 633, 648 (2010)). Relief is barred absent a case with indistinguishable (even if not

10 identical) circumstances, in which the Supreme Court "found" a violation of the Constitution.

11 *Metrish v. Lancaster*, 133 S. Ct. 1781, 1792 (2013).

12  This demands considerable leeway for state courts. For example, a state court need not

13 consider "factors" the prior Supreme Court case did not note. *Berghuis v. Smith*, 559 U.S. 314,

14 321 (2010). On the other hand, if the Supreme Court did note certain factors, that does not clearly

15 establish those factors actually make out a constitutional test. *Renico v. Lett*, 559 U.S. 766, 778-

16 79 (2010); *see Richter*, 562 U.S. at 102.

17  In particular, context of a legal rule is critical. If the Supreme Court applied a rule in one

18 context, circuit law cannot "bridge the gap" to extend the rule to a new context. *Glebe v. Frost*,

19 135 S. Ct. 429, 431 (2014) (per curiam); *Premo v. Moore*, 562 U.S. 115, 127 (2011); *Carey v.*

20 *Musladin*, 549 U.S. 70, 75-76 (2006). It matters not if applying the rule to a new context is a

21 "logical next step." *White v. Woodall*, 134 S. Ct. 1697, 1707 (2014). If a court could draw a

22 "principled distinction between the case before it and Supreme Court caselaw," such caselaw is

23 no basis to grant a writ. *Murdoch v. Castro*, 609 F.3d 983, 991 (9th Cir. 2010) (en banc);

24 *Schneider v. McDaniel*, 674 F.3d 1144, 1149-50 (9th Cir. 2012). It matters not whether circuit

25 law would extend, clarify, or refine the rule to apply it to a petitioner's context. *Marshall v.*

26 *Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam); *Murray v. Schriro*, 746 F.3d 418, 443 (9th

27 Cir. 2014). There is "no justification for relying on" a prior circuit case that itself did not purport

28 to decide the specific issue whether the rule in question was clearly established by the Supreme

7

1    Court.  *Frost*, 135 S. Ct. at 431; *Woodall*, 134 S. Ct. at 1702 n.2 (2014); *Parker v. Matthews*, 567

2    U.S. 37, 48-49 (2012) (per curiam).

3                              (b)    **Unreasonable Application of Rule**

4           Even so, existence of a clearly established legal rule is no license to apply it de novo.  The

5    federal writ is barred unless each state court path to deny relief lacked the support of an "at least

6    arguable" theory.  *Richter*, 562 U.S. at 106; *Woodall*, 134 S. Ct. at 1707.  It must be "clear" the

7    state court "erred so transparently that no fairminded jurist could agree with that court's

8    decision."  *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (per curiam); *Richter*, 562 U.S. at 102.

9           A federal court cannot find such error by analyzing one or more issues de novo to reach a

10   different result, then globally finding a state court acted unreasonably.  *Rice v. Collins*, 546 U.S.

11   333, 342 (2006).  Reasonableness is tested at an analytical level, with a federal court considering

12   all "arguments or theories" that supported, or may have supported the state court result, with only

13   Supreme Court cases relevant at each step.  *Richter*, 562 U.S. at 102; *Pinholster*, 563 U.S. at 188.

14   That includes steps where a state court makes quasi-legal findings, like weighing facts claimed to

15   show prejudice.  *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam) (state court view

16   as to weight barred only if "precedent of this Court clearly forecloses" it).  Rather than citing

17   global disdain for a state court result, a federal court must cite the specific juncture where a state

18   court analyzed one way, but it was "beyond the realm of possibility that a fairminded jurist could"

19   agree.  *Id.*  State court's analysis at each step is controlling if it "at least debatable," *Richter*, 562

20   U.S. at 110—and a point can be "debatable" even if all might disagree after "full consideration,"

21   *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

22                      **(2)    Factual Unreasonableness Under 28 U.S.C. § 2254(d)(2)**

23          Stringent too is the burden to show the state court found facts unreasonably "in light of the

24   evidence presented in the State court proceedings."  28 U.S.C. § 2254(d)(2).  Despite circuit

25   language, *e.g.*, *Hurles v. Ryan*, 752 F.3d 768, 790 (9th Cir. 2014), the Supreme Court has held

26   "review under § 2254(d)(2)" does not reach to "adequacy of the procedures and standards" a state

27   court employed to find facts, as *process* is reviewed only by 28 U.S.C. § 2254(d)(1), *Brumfield v.*

28   *Cain*, 135 S. Ct. 2269, 2277 n.3 (2015), a review limited to law clearly established in Supreme

                                                  8

1    Court cases. Necessarily, it matters not if in state court a petitioner could not obtain evidence he

2    thought or hoped existed—e.g., that a state court did not assist him by enabling discovery. *See*

3    *Runningeagle v. Ryan*, 686 F.3d 758, 773 (9th Cir. 2012) (bar against new evidence applies

4    "[r]egardless of whether [petitioner] acted diligently" in state court).[4]

5         Simply, the entire concern of 28 U.S.C. § 2254(d)(2) is "underlying factual conclusions the

6    court reached," *Brumfield*, 135 S. Ct. at 2277 n.3; *Dixon*, 565 U.S. at 28 n.1, strictly in light of

7    "the record that was before that state court," *Pinholster*, 563 U.S. at 185 & n.7. And no exception

8    exists absent proof a state court's denial included factual conclusions that were implausible from

9    the record. *Renico*, 559 U.S. at 778; *see Soto v. Ryan*, 760 F.3d 947, 957 (9th Cir. 2014).[5]

10    **ARGUMENT**

11    **I.    REJECTING AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM WAS REASONABLE**

12         The petition raises five claims. (Pet., at 4-5, 11-19.) What is captioned as another

13    memorandum discusses additional or overlapping contentions. (Pet., at 22-111.) Respondent

14    addresses only the five claims raised at pages 4-5, and 11-19, and 22, and does so only as they

15    appear to have been presented to the state court. Should this be insufficient for federal review,

16    petitioner should be ordered to file a more definite statement. (Fed.R.Civ. Proc. 12(e).)

17         In claim one, petitioner mentions various legal theories in connection with his argument

18    that his trial counsel failed to investigate his prior convictions. (Pet., at 4, 11-17.) At bottom, this

19    is an ineffective assistance of counsel claim. It was reasonably disposed of by the state superior

20    court as follows:

21         A petitioner seeking relief by way of habeas corpus has the burden of stating a
22    prima facie case. (*In re Bower* (1985) 38 Cal.3d 865, 872.) A petition should attach as
     exhibits all reasonably available documentary evidence or affidavits supporting the
23    claim. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) To show constitutionally
     inadequate assistance of counsel, a defendant must show that counsel's representation
24    fell below an objective standard and that counsel's failure was prejudicial to the

---

25        [4] *And see People v. Gonzalez*, 51 Cal. 3d 1179, 1260 (1990) (habeas review is "not a
device for investigating possible claims, but a means for vindicating actual claims"); *Borden v.
26    Allen*, 646 F.3d 785, 810 (11th Cir. 2011) (unlike ordinary civil litigant, habeas petitioner "is, or
should be, aware of the evidence to support the claim before bringing his petition").
27        [5] However, even before AEDPA's new constraints on the writ, it was settled that a state
court's finding of fact is fairly supported by a record whenever that record was "ambiguous" on
28    the relevant point. *Palmer v. Estelle*, 985 F.2d 456, 459 (9th Cir. 1993).

1

defendant. (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.) Actual prejudice must be
shown, meaning that there is a reasonable probability that, but for the attorney's

2

error(s), the result would have been different. (*Strickland v. Washington* (1984) 466
U.S. 668, 694.) It is not a court's duty to second-guess trial counsel and great

3

deference is given to trial counsel's tactical decisions. (*In re Avena* (1996) 12 Cal.4th
694, 722.) A petition alleging ineffective assistance of counsel based on the failure to

4

obtain favorable evidence must show what evidence should or could have been
obtained and what effect it would have had. (*People v. Geddes* (1991) 1 Cal.App.4th

5

448, 454.)

6

Petitioner argues that trial counsel was ineffective for failing to conduct any
pretrial investigation, particularly regarding Petitioner's prior strike convictions, and

7

failing to present a defense at trial of self-defense. However, Petitioner has not
attached any evidence of what such investigation would have discovered or what

8

evidence could have been presented at trial. Therefore, he has shown neither
unreasonable conduct nor prejudice to Petitioner's case.

9

10

(Doc. 16, at 1-2.)

11

As best can be gleaned from the petition, Petitioner does not argue that rejection of the state

12

court claim triggered an exception to 28 U.S.C. § 2254(d)'s re-litigation bar; the pleading just

13

reasserts the gist of the claim he raised in state court.  (*See* Doc. 23.)  Thus, Petitioner has

14

"ignored" 'the only question that matters under § 2254(d)(1).' "  *See Richter*, 562 U.S. at 102.

15

The state court could have reasonably rejected Petitioner's claim because Petitioner failed to

16

present evidence as to what counsel failed to investigate/discover and as to what evidence could

17

have been presented at trial.  And to the extent Petitioner offers anything more to support his

18

claim, it is unexhausted and *Pinholster* barred.  Consequently, this claim must be denied.

19

**II.    REJECTING CLAIMS OF AN UNAUTHORIZED SENTENCE WAS REASONABLE**

20

Petitioner's second and third claims argue that the sentences on the assault charge (claim 2)

21

and on the strike priors (claim 3) were unauthorized.  (Pet., at 4-5, 12-17.)  The state court

22

analyzed and rejected these claims as follows:

23

**TRIAL COURT RULINGS**

24

**ILLEGAL SENTENCE**

25

In general, an illegal sentence may be challenged at any time. (*In re Estrada*
(1965) 63 Cal.2d 740, 749-50.)

26

27

Petitioner claims that his sentence under the Three Strikes Law and the
enhancements under Penal Code section 667(a) are unauthorized because his current
case is non-violent. However, a defendant may be sentenced pursuant as a third-strike

28

defendant if the current offense is a serious or violent felony and he has been

10

1
2
3
4

previously convicted of two or more prior serious or violent felonies. Likewise, the enhancement under section 667(a) applies if a defendant has been convicted of a serious felony and has committed a prior serious felony. Petitioner's current offense is a serious felony. (See Pen. Code, § 1192. 7 (c) (31).) Given his conviction and the jury's findings, Petitioner has not shown that the sentence imposed was unauthorized. Therefore, he has not shown that he is entitled to any relief.

5      Petitioner's claims both fail to qualify for an exception to section 28 U.S.C's re-litigation

6   bar and present non-federal question claims concerning the application by California of its own

7   sentencing laws. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (misapplication of state law results

8   in due process violations only if the sentence is arbitrary and capricious); *Souch v. Schaivo*, 289

9   F.3d 616, 623 (9th Cir. 2002); *Miller v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989) (refusing to

10   examine state's determination that a prior conviction was a serious felony).  Thus, claims 2 and 3

11   must fail.

12   **III.   THE NEW-EVIDENCE CLAIM IS PROCEDURALLY BARRED AND NOT COGNIZABLE
        ON FEDERAL HABEAS**

13

14      Petitioner's fourth claim is that newly discovered evidence shows his convictions violated

15   due process.  (Pet., at 5, 17-19.)  In support, he attaches purported declarations from two of the

16   eyewitnesses who testified against him at trial:  his son, Avery Blount, and the victim, David

17   Beckham.  (*Id*., at 200-210.)  Both documents bear certification dates of November 12, 2012.  (*Id*.,

18   at 200, 205.)  Both statements run counter to both mens' trial testimony and mitigate Petitioner's

19   actions.  (*Id*., at 200-210; Doc. 12, at 2-3.)

20      Petitioner did not present this claim to the state superior court which issued a reasoned

21   decision on September 15, 2015.  Instead, it appears petitioner did not present this claim to a state

22   court until November 21, 2016, when he filed a petition for writ of habeas corpus in the

23   California Supreme Court.  (Doc. 25.)  That court denied this claim with a citation to *In re Clark*,

24   5 Cal.4th 750, 767-769 (1993) (discussing repetitious and piecemeal claims); *see also In re Reno*,

25   55 Cal.4th 428, 456, 511 (2012) (imposed procedural bars are signified by citation to the cases

26   describing them).

27      Plainly stated, the state court decision denying this claim rests on an independent

28   procedural ground and bars federal review.  *In re Clark's* bars are routinely applied.  See *Walker*

11

Answer to Petition for Writ of Habeas Corpus (2:15-cv-01809-KJM-AC)

1    *v. Martin*, 562 U.S. 307 (2011).  The mere existence of newly discovered evidence relevant to

2    guilt is not grounds for federal habeas relief – "such evidence must bear upon the constitutionality

3    of an applicant's detention."  *Townsend v. Sain,* 372 U.S. 293, 317 (1963); *Gordon v. Duran*, 895

4    F.2d 610, 614 (9th Cir. 1990).  Newly discovered evidence is grounds for habeas corpus relief

5    only when it both bears on the constitutionality of an applicant's conviction and would probably

6    produce an acquittal.  *Swan v. Peterson,* 6 F.3d 1373, 1384 (9th Cir. 1993); *Fuller v. Roe*, 182

7    F.3d 699, 703-704 (9th Cir. 1999) (petitioner's challenge to trial court's failure to consider new

8    evidence did not raise legitimate cognizable claim for habeas review); *see also Jeffries v. Blodgett,*

9    5 F.3d 1180 (9th Cir. 1993) (announcing that the existence merely of newly discovered evidence

10   relevant to the guilt of a state prisoner is not grounds for relief on federal habeas corpus).

11          In any event, Blount's and Beckham's recantation of their trial testimony is an obvious

12   attempt to help Blount's father – petitioner.  And the affidavits lack credibility in light of the

13   affiants' clear trial testimony to the contrary and that of corroborating witnesses.  (*See* Doc. 12 at

14   2-3.)

15   **IV.    ANY CLAIMS NOT RAISED ON DIRECT APPEAL ARE *DIXON*-BARRED**

16          In state court, Petitioner raised various claims involving trial court errors that were not

17   raised in direct appeal.  (Lod. Doc. 15.)  The state court rejected these claims as follows:

18          **A.    Claims Not Raised on Appeal**

19          Claims that could have been raised on appeal are not cognizable on habeas
     corpus unless the petitioner can show that (1) clear and fundamental constitutional
20   error strikes at the heart of the trial process; (2) the court lacked fundamental
     jurisdiction; (3) the court acted in excess of jurisdiction not requiring a
21   redetermination of facts; or (4) a change in law after the appeal affected the petitioner.
     (*In re Dixon* (1953) 41 Cal.2d 756, 759; *Harris, supra*, 5 Cal.4th at 828.)
22

          Petitioner makes various claims involving errors at trial that were not raised on
23   appeal, including the that the trial court improperly denied Petitioner's *Faretta* and
     *Marsden* motions, Petitioner was denied the right to testify, evidence of the victim's
24   sobriety was improperly excluded, the opening statements were not transcribed, his
     prior conviction was not sanitized for the jury, his prior convictions did not qualify as
25   strike priors, and his sentence constituted cruel and unusual punishment. All of these
     claims could have been raised on appeal. In particular, Petitioner had a jury trial on
26   the strike priors; therefore, any claim that there was insufficient evidence to support
     the priors could and should have been raised on appeal. Therefore, these claims are
27   barred by *Dixon*.

28

Answer to Petition for Writ of Habeas Corpus (2:15-cv-01809-KJM-AC)

1    The state court's application of the well-settled *Dixon* bar precludes federal review of these

2   claims. *Johnson v. Lee*, 578 U.S. ___, 136 S.Ct. 1892 (2016); *In re Reno*, 55 Cal.4th 428 (2012).

3
4   **V.    THE STATE COURT REASONABLY REJECTED PETITIONER'S PRIOR CONVICTION EVIDENCE CLAIM**

5    Petitioner claims the trial court erred by admitting prior conviction evidence.  (Pet., at 22.)

6   He raised this claim in state court on direct appeal.  (Lod. Docs. 8, 13.)  For the reasons given in

7   the state court opinion (Lod. Doc. 12), the state court reasonably rejected it.  In any event, there is

8   no clearly established Supreme Court precedent holding that the admission of this evidence

9   violates Due Process.  Even so, any error would be harmless under *Brecht* based on the

10  reasonableness of the state court's finding of harmless error.  Consequently, this claim must be

11  rejected.

12
13                                   **CONCLUSION**

14    Based on the foregoing, respondent submits that the petition for writ of habeas corpus

15  should be denied.

16  Dated:  October 19, 2017                    Respectfully Submitted,

17                                              XAVIER BECERRA
                                                Attorney General of California
18                                              TAMI M. KRENZIN
                                                Supervising Deputy Attorney General
19
                                                */S/ Stephen G. Herndon*
20
                                                STEPHEN G. HERNDON
21                                              Supervising Deputy Attorney General
                                                *Attorneys for Respondent*
22
    SA2017304830
23  33022828.doc

24

25

26

27

28
                                        13