UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD BLOUNT,<br><br>　　　　Petitioner,<br><br>　v.<br><br>J. SOTO, Warden,<br><br>　　　　Respondent. | No. 2:15-cv-1809 KJM AC<br><br><u>ORDER AND FINDINGS AND RECOMMENDATIONS</u> |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the Third Amended Petition, ECF No. 18, which challenges petitioner's December 2012 conviction for assault with a deadly weapon with two prior serious felony convictions. Respondent has answered, ECF No. 46, and petitioner has filed a memorandum in response, ECF No. 50, that the court construes as a traverse.

<u>BACKGROUND</u>

I.　<u>Proceedings In the Trial Court</u>

　　A.　<u>Preliminary Proceedings</u>

Petitioner was charged in Sacramento County with assault with a deadly weapon, with an enhancement for great bodily injury, and misdemeanor vandalism. The charges arose from an incident in which petitioner assaulted a family member at a social gathering and smashed the

1

windshields of several vehicles. The case went to trial.

The prosecution moved in limine to admit evidence of a 2007 incident in which petitioner had assaulted his son, who was a teenager at the time, and threatened his son's mother. Petitioner had been convicted of criminal threats in that case. The prosecutor offered the evidence to show motive and rebut self-defense. The trial court granted the motion.

B. The Evidence Presented at Trial[1]

The jury heard evidence of the following facts. On October 18, 2011, Avery Blount was living with petitioner (his father), his son, mother, and brother. When Avery came home that day, there was an outdoor barbecue for his birthday. Among the attendees were Avery's cousins David Beckhorn, Richard Harris, and Michael Plunkett.

Petitioner arrived at the party later in the evening. He was angry and drunk and started arguing with a neighbor named Chin. Petitioner yelled at Chin and threatened to "beat his ass." He temporarily left the party; when he returned, petitioner continued to yell profanity at Chin. Avery told petitioner to stop swearing, but petitioner ignored him. Petitioner got upset with Avery for taking sides and not allowing him to fight Chin.

Petitioner went into the house several times, returning outside "yelling and cursing and throwing a bike in the middle of the street." Petitioner threatened Harris and swore at him. Avery Blount and his cousins went into the house with petitioner and tried to calm him down, but they were unsuccessful. After Avery and his cousins walked outside and said, "we quit," petitioner came outside, ready to fight Avery.

Petitioner told Avery that he "owed [him] for the last time." Avery testified that this was a reference to a fight he had with petitioner when Avery was 16 or 17 and his mother had thrown petitioner out of the home. After being thrown out, petitioner had kicked through a window, banged on a door, and entered the home. Petitioner took Avery's mother into the living room, argued with her, said he was going to hurt her, and then lunged at her. Avery grabbed a bread

---

[1] This summary is adapted from the opinion of the California Court of Appeal, Lodged Doc. 12 at 2-3. This court has independently reviewed the trial record and finds this summary to be accurate.

2

knife from the dishwasher and hit petitioner in the head to stop him. Petitioner then threw several punches at Avery, striking him about six times, and also threw a Crock-Pot and carpet cleaner at him. The confrontation ended when the police arrived. Petitioner was convicted of criminal threats as a result of the incident.

After telling Avery that he "owed him" for that 2007 incident, petitioner put up his hands in a fighting gesture and then lunged at Avery. David Beckhorn tried to stop the attack by grabbing petitioner's hands; petitioner responded by choking Beckhorn. The two fell and Beckhorn struck his head on a television stand.

After Avery pulled petitioner off Beckhorn, petitioner pushed out a window and unsuccessfully tried to jump through it. Plunkett said he was calling 911, which further enraged petitioner. As Avery, Harris, and Plunkett started to leave through the front door, petitioner grabbed a golf club and hit Beckhorn with it. Beckhorn grabbed another golf club and tried to deflect the attack. Petitioner then chased them out of the house as he was swinging the golf club. Petitioner ran into the garage and smashed out car windshields, including the one in Beckhorn's car.

Neighbor Deanne Teel called 911 at 9:32 p.m. She reported an argument, two loud cracks, and a man wielding a weapon with several other people trying to calm him down. A deputy arrived and encountered petitioner, who was pacing, waving his arms around, and smelled of alcohol. Beckhorn was holding a bloody rag to his head. Petitioner was arrested after a brief investigation.

Petitioner told a deputy he was angry at a neighbor and challenged him to a fight. The neighbor refused and petitioner went home. Avery Blount and his cousins then confronted petitioner about his behavior. Beckhorn pushed him several times, so petitioner "took [him] down." Avery Blount and Beckhorn started punching petitioner and pushed him into a window. Petitioner first said no one had a golf club, but later claimed Beckhorn hit him with a golf club. He denied having a golf club or smashing the windshield to Beckhorn's car, claiming he only defended himself from their attacks.

////

C.  Outcome

On September 19, 2012, the jury found petitioner guilty of assault with a deadly weapon on David Beckhorn and misdemeanor vandalism of Beckhorn's car.  Petitioner was acquitted of the great-bodily-injury enhancement.

On September 20, 2012, the prior conviction allegations were tried to the court without a jury and both were found to be true.  The court found that both priors counted as strikes under California's "three strikes" law.

On December 14, 2012, petitioner filed a Romero motion[2] challenging the strike designations.  The motion was denied, and petitioner was sentenced to an aggregate term of 35 years to life.

II.     State Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on July 10, 2014.  Lodged Doc. 12.  The California Supreme Court denied review on September 17, 2014.  Lodged Doc. 14.

While his appeal was pending, petitioner filed two pro se habeas petitions in the California Court of Appeal.  Lodged Docs. 17, 19.  Both were summarily denied pursuant to In re Harris, 5 Cal.4th 813 (1993), due to the pendency of the appeal.  Lodged Docs. 18, 20.  Petitioner sought review in the California Supreme Court, which was denied on May 15, 2013.  Lodged Doc. 24.

Following the finality of conviction on direct appeal, petitioner filed a petition for writ of habeas corpus in the Superior Court of Sacramento County, which was denied on the merits in a written decision on September 15, 2015.  Lodged Docs. 15 (petition), 16 (order).  Petitioner also filed a habeas petition in the California Court of Appeal, which was denied without comment or citation on September 10, 2015.  Lodged Doc. 22.  Petitioner then filed a habeas petition in the California Supreme Court, which was summarily denied on January 11, 2017.  Lodged Doc. 25.

////

////

---

[2] People v. Superior Court (Romero), 13 Cal. 4th 497 (1996).

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 563 U.S. at 102.

## DISCUSSION

### I.     Preliminary Considerations

The operative third amended petition totals 252 pages including exhibits; the handwritten portion comprises over 100 pages of factual narrative and legal argument, which are dense and poorly organized. ECF No. 18. The court has done its best to discern what petitioner is trying to say, but is not responsible for extracting potentially cognizable claims from this vast volume of verbiage. Similarly, respondent has answered to the best of his ability, addressing those claims that are expressly identified and correlate most readily with the claims that petitioner presented to the state courts. ECF No. 46. Because petitioner may proceed here only on claims that have been exhausted in state court, see 28 U.S.C. § 2254(b), this is an appropriate approach. The court finds that respondent's identification of petitioner's claims is appropriate, and follows that schema here.

////

////

II.   Claim One: Ineffective Assistance of Counsel

   A. Petitioner's Allegations

Petitioner's first claim is initially identified as involving violations of petitioner's Marsden and Brady rights.[3] ECF No. 18 at 4. The attached statement of facts clarifies that the gravamen of the claim is ineffective assistance of counsel in violation of petitioner's Sixth Amendment rights. Id. at 22 et seq. The allegations regarding trial counsel's performance are enormously wide-ranging, but petitioner focuses primarily on trial counsel's failure to investigate and present a self-defense case, and failure to investigate and successfully challenge the prior strike convictions.

   B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 692, 694 (1984). Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

   C. The State Court's Ruling

This court must first determine which state-court decision serves as the basis for review. Under AEDPA, when more than one state court has adjudicated the applicant's claim, the federal court looks to the last "reasoned" decision. Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir.

---

[3] See People v. Marsden, 2 Cal. 3d 118 (1970) (establishing procedures for hearing on defendant's motion for substitute counsel); Brady v. Maryland, 373 U.S. 83 (1963) (holding that prosecutors have a constitutional obligation to disclose exculpatory evidence to accused). The petition does not identify any exculpatory evidence that is alleged to have been suppressed by the prosecution within the meaning of Brady and progeny. The court interprets this reference as a complaint that trial counsel did not obtain unspecified discovery and/or did not discover exculpatory evidence.

2005). The superior court issued a reasoned, written decision on petitioner's wide-ranging ineffective assistance of counsel claim, which was implicitly adopted by the higher state courts. See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). Because the superior court issued the only reasoned decision adjudicating the IAC claim, that is the decision reviewed for reasonableness under § 2254(d). See Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).

The superior court ruled as follows:

> A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case. (In re Bower (1985) 38 Cal.3d 865, 872.) A petition should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim. (People v. Duvall (1995) 9 Cal.4th 464, 474.) To show constitutionally inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant. (In re Alvernaz (1992) 2 Cal.4th 924, 937.) Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different. (Strickland v. Washington (1984) 466 U.S. 668, 694.) It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions. (In re Avena (1996) 12 Cal.4th 694, 722.) A petition alleging ineffective assistance of counsel based on the failure to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have had. (People v. Geddes (1991) 1 Cal.App.4th 448, 454.)
> Petitioner argues that trial counsel was ineffective for failing to conduct any pretrial investigation, particularly regarding Petitioner's prior strike convictions, and failing to present a defense at trial of self-defense. However, Petitioner has not attached any evidence of what such investigation would have discovered or what evidence could have been presented at trial. Therefore, he has shown neither unreasonable conduct nor prejudice to Petitioner's case.

Lodged Doc. 16 at 1-2.

As to petitioner's related assertions that the trial court improperly denied his motions under Marsden and Faretta,[4] the court ruled that these were issues which could have been raised on appeal and were therefore barred in habeas under In re Dixon, 41 Cal.2d 756, 759 (1953) and In re Harris, 5 Cal.4th 813, 828 (1993). Lodged Doc. 6 at 41.

---

[4] See People v. Marsden, 2 Cal. 3d 118 (1970) (governing defendant's motion for substitute counsel); Faretta v. California, 422 U.S. 806 (1975) (governing defendant's motion for self-representation).

D. <u>Objective Reasonableness Under § 2254(d)</u>

The superior correct correctly stated the standard that governs ineffective assistance of counsel claims under <u>Strickland</u>. Accordingly, its ruling cannot be considered "contrary to" clearly established federal law.

The state court's application of <u>Strickland</u> was not objectively unreasonable. When a state court denies a claim for failing to state a prima facie case, the absence of a prima facie case is the determination that must be reviewed for reasonableness under § 2254(d). <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1054-55 (9th Cir. 2003), <u>cert. denied</u>, 543 U.S. 1038 (2004). Under <u>Strickland</u> itself, a petitioner must plead and eventually prove both deficient performance and prejudice from counsel's errors or omission—and that requires at least a proffer of specific evidence that could have been discovered and presented and would likely have changed the outcome of the trial. See <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations which are not supported by a statement of specific facts do not support habeas relief); <u>Grisby v. Blodgett</u>, 130 F.3d 365, 373 (9th Cir. 1997) (speculation about unpresented evidence is not enough to establish prejudice from ineffective assistance); <u>Hendricks v. Calderon</u>, 70 F.3d 1032, 1042 (1995) (absent a specific account of what beneficial evidence would have been revealed by further investigation, petitioner cannot meet the prejudice prong of <u>Strickland</u>). The petition before the superior court contained no such showing. Accordingly, there was nothing objectively unreasonable about the conclusion that petitioner had failed to establish a prima facie case under <u>Strickland</u>.

To the extent if any that petitioner's references to his <u>Marsden</u> and <u>Faretta</u> motions are meant to provide independent grounds for relief, rather than merely highlighting petitioner's dissatisfaction with his lawyer, such claims are procedurally defaulted. The superior court refused to consider those issues under independent and adequate state law procedural rules that foreclose federal review. See <u>Johnson v. Lee</u>, 578 U.S. 605 (2016) (finding California rules adequate to support default); <u>In re Reno</u>, 55 Cal.4th 428 (2012) (clarifying application of rules). Petitioner could not prevail on these claims in any event, because his litany of complaints against his trial counsel does not demonstrate that the trial court's failure to remove that lawyer prejudiced him. Even without the deference that AEDPA requires, plaintiff cannot obtain federal

habeas relief without a showing that constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637-638 (1993).

For the same reason that petitioner's IAC claim was reasonably denied, any other claims predicated on the status of his representation necessarily fail. In sum, petitioner has presented nothing to demonstrate that had counsel done a better job—or had a different lawyer been appointed, or had he been permitted to represent himself—a different verdict would have been reasonably likely. Accordingly, relief is unavailable on Claim One.

### III. Claims Two and Three: Unauthorized Sentence

#### A. Petitioner's Allegations

Petitioner contends in Claim Two that the sentence imposed for the assault charge was unauthorized by law, and in Claim Three that the strike priors were unauthorized. ECF No. 18 at 4-5, 22 et seq. As far as this court can tell, petitioner's arguments as to the assault sentence and as to the application of the three-strikes law rest primarily on the theory that he acted in self-defense, therefore should not have been convicted (and would not have been convicted, or suffered the strike findings, if properly represented), and therefore should not have been sentenced as he was. Petitioner also suggests that his offense should have been categorized as non-violent for sentencing purposes.

#### B. The Clearly Established Federal Law

Sentencing is governed by state law, and errors related to the application of state law do not support federal habeas relief. Lewis v. Jeffers, 497 U.S. 764, 780 (1990). A state sentencing error violates a defendant's federal constitutional rights, and supports habeas relief, only where the error is "so arbitrary or capricious as to constitute an independent due process violation." Richmond v. Lewis, 506 U.S. 40, 50 (1992); see also Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994) (absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing law does not support habeas relief). Federal courts are "bound by a state court's construction of its own penal statutes," Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993), and this court must defer to the California courts' application of the three-strikes law unless that

interpretation is "untenable or amounts to a subterfuge to avoid federal habeas review of a constitutional violation." Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert. denied, 493 U.S. 942 (1989).

### C. The State Court's Ruling

Petitioner's sentencing challenges were addressed by the superior court in habeas, as follows:

> Petitioner claims that his sentence under the Three Strikes Law and the enhancements under Penal Code section 667(a) are unauthorized because his current case is non-violent. However, a defendant may be sentenced pursuant as a third-strike defendant if the current offense is a serious or violent felony and he has been previously convicted of two or more prior serious or violent felonies. Likewise, the enhancement under section 667(a) applies if a defendant has been convicted of a serious felony and has committed a prior serious felony. Petitioner's current offense is a serious felony. (See Pen. Code, § 1192. 7 (c) (31).) Given his conviction and the jury's findings, Petitioner has not shown that the sentence imposed was unauthorized. Therefore, he has not shown that he is entitled to any relief.

Lodged Doc. 16 at 3

### D. Objective Reasonableness Under § 2254(d)

This court has no authority to revisit a state court's conclusion that a criminal sentence comported with state law. See Lewis, 497 U.S. at 780; Richmond, 506 U.S. at 50; see also Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989) (refusing to examine state's determination that a prior conviction was a serious felony). If there is a federal question buried in petitioner's briefing of these issues, which the state court denied implicitly or failed to reach, such summary rejection cannot have been objectively unreasonable.

The undersigned is aware of no clearly established federal law that could support petitioner's position as to sentencing. Absent U.S. Supreme Court precedent finding a similar sentence on similar facts to be fundamentally unfair, § 2254(d) bars relief. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam) (there can be no unreasonable application of clearly established federal law where the Supreme Court itself has not announced the rule that governs petitioner's claim). Quite to the contrary, the Supreme Court has found life sentences in three-strikes cases to be constitutionally permissible even for property offenses, see Ewing v.

California, 538 U.S. 11 (2003), and has found federal habeas relief unavailable to a California inmate sentenced to life imprisonment for petty theft, Lockyer v. Andrade, 538 U.S. 63 (2003). Petitioner was convicted of felony assault with a deadly weapon, and no federal caselaw supports the theory that a 35-to-life sentence is substantively unconstitutional. Relief is therefore unavailable on Claims Two and Three.

    IV.    Claim Four: Newly Discovered Evidence

        A.    Petitioner's Allegations

Petitioner contends that "newly discovered evidence" invalidates his conviction. ECF No. 18 at 5. He presents affidavits from Avery Blount and David Beckhorn, both of whom testified against him at trial. Both affidavits recount a version of the incident that is inconsistent with the declarants' trial testimony and is partially exculpatory of petitioner. Specifically, the affidavits state that Beckhorn's head injury was caused not by petitioner hitting him in the head with a golf club, but by his fall against the corner of a TV stand during the altercation. Both affidavits claim that the witnesses testified falsely at trial because they had been threatened by the prosecutor, who actively suborned their perjury. ECF No. 18 at 200-201.

Both affidavits are dated November 12, 2012, which is after petitioner was convicted but before he was sentenced. The undersigned notes that these affidavits were not presented on a motion for new trial, either by counsel or by petitioner as the defendant in pro se, as might be expected when new evidence emerges after a verdict and before sentencing.

        B.    The Clearly Established Federal Law

No United States Supreme Court precedent holds that the discovery after conviction of evidence inconsistent with that conviction, without more, establishes a violation of federal constitutional rights or supports federal habeas relief. Even affirmative proof of actual innocence does not provide a basis for federal habeas relief, because there is no "clearly established federal law" that recognizes a substantive constitutional right not to be criminally convicted if innocent. See Herrera v. Collins, 506 U.S. 390, 404 (1993); Dist. Attorney's Office v. Osborne, 557 U.S. 52, 71-72 (2009) (recognizing that the Supreme Court has not decided the issue).

In procedural contexts where "actual innocence" may be relevant to federal habeas

12

proceedings, the standard is high: a petitioner must present reliable new evidence, in light of which no reasonable jury would have convicted him. See Schlup v. Delo, 513 U.S. 298 (1995) (actual innocence as exception to procedural default), McQuiggin v. Perkins, 569 U.S. 383 (2013) (actual innocence as basis for equitable tolling of statute of limitations). Meeting this standard does not entitle a petitioner to habeas relief; it only excuses a procedural defect that would otherwise bar federal consideration of some other, independently cognizable claim of a constitutional violation.

### C. The State Court's Ruling

It is unclear to the undersigned whether this claim, and the supporting affidavits, were ever presented to or addressed by a state court. Respondent represents in the answer that the matter was presented to the California Supreme Court in petitioner's 2016 habeas petition, and argues that it is procedurally defaulted because that petition was denied with citation to In re Clark, 5 Cal.4th 750, 767-769 (1993) (discussing bars applicable to untimely, repetitious, and piecemeal claims); see also Reno, 55 Cal.4th at 511. See ECF No. 46 at 11-12. Petitioner represents that the claim is unexhausted, and requests a stay under Rhines v. Weber, 544 U.S. 269 (2005), to permit exhaustion. ECF No. 18 at 5, 7-8.[5] The lodged state court record omits the 2016 petition that was filed in the California Supreme Court, so a comparison of its claims with those of the federal claims is not possible.[6] Such comparison is unnecessary, however, because the claim is non-cognizable in federal habeas regardless of exhaustion or default.

### D. Claim Four Does Not Present Any Cognizable Ground for Federal Habeas Relief

As set forth above, no clearly established law provides that a federal court may invalidate a state conviction on grounds that evidence discovered post-trial casts doubt on the verdict. Even

---

[5] Petitioner states that the "new" evidence was discovered "post trial and post direct appeal," id. at 5, but that is patently incorrect. The affidavits on their face predate the appeal altogether.

[6] The state court record was lodged in hard copy in 2017. ECF No. 44. Both the notice of lodging and the answer refer to Lodged Document 25 as the petition filed in the California Supreme Court as Case No. S238478, and Lodged Document 26 as the order denying that petition. However, the actual paper document labelled as Lodged Document 25 is the order dated January 11, 2017, denying the petition in Case No. S238478; there is no Lodged Document 26. For the reasons explained above, correction of the lodgment is not necessary.

affirmative proof of actual innocence has never been held by the U.S. Supreme Court to violate the constitution or warrant federal habeas relief. See Osborne, 557 U.S. at 71-72. Accordingly, no state court rejection of a claim predicated on petitioner's proffered "new evidence" could possibly constitute an unreasonable application of clearly established federal law. See Wright, 552 U.S. at 125-126 (where there is no clearly established federal law governing a claim, there can be no § 2254(d) exception to AEDPA's bar to relief). Petitioner therefore cannot prevail on Claim Four even if it has been exhausted and not procedurally defaulted.[7]

For the same reason, any presentation (or re-presentation) of this claim to the state courts would be futile. The merit of unexhausted federal claims is one of the elements a federal petitioner must establish to obtain a stay pending further exhaustion under Rhines v. Weber. See Rhines, 544 U.S. at 277-78. Petitioner cannot satisfy this prong of the Rhines standard because the claim he seeks to exhaust is federally non-cognizable and thus meritless as a matter of law.[8]

For these reasons, relief is unavailable on Claim Four and the request for a Rhines stay should be denied.

////

---

[7] The court notes that even if federal habeas relief were available on a freestanding claim of innocence, petitioner's showing would not meet Schlup's high standard. Even assuming that petitioner's proffered affidavits constitute "new evidence," recantation by trial witnesses is not sufficiently reliable to satisfy Schlup. To the contrary, courts have long recognized that that recantation evidence is inherently suspect. See Allen v. Woodford, 395 F.3d 979, 994 (9th Cir. 2005); see also Dobbert v. Wainwright, 468 U.S. 1231, 1233 (1984) (Brennan, J., dissenting from denial of certiorari) ("Recantation testimony is properly viewed with great suspicion."). The ultimate question is not whether a jury could have believed Avery Blount's and David Beckhorn's post-trial recantations, but whether *no reasonable jury* could have convicted petitioner in light of them. House v. Bell, 547 U.S. 518, 538 (2006). All the evidence, both the trial evidence and the newly presented evidence, must be considered in this context. Id. Here, the other evidence includes 911 calls in which Avery Blount and Michael Plunkett screamed that petitioner was drunk and crazy and swinging golf clubs at them, and the eyewitness testimony of various party attendees and neighbors who testified to plaintiff's drunken agitation and aggressiveness. While a jury might have accepted the recantations, it cannot be said on this record that no reasonable jury would have found petitioner guilty in light of them.

[8] It also does not appear that petitioner could establish either good cause for delayed exhaustion or diligence regarding the claim, which are the other two prongs of the test. Rhines, 544 U.S. at 277-78. The affidavits are dated November 2012, but they were not offered to the trial court prior to sentencing in December 2012 or included in the habeas petition filed in the superior court in 2015.

V.   Additional Claim: Admission of Evidence of Prior Misconduct

A. Petitioner's Allegations

Although the petition's statement of claims does not list the issue, ECF No. 18 at 4-5, the body of the petition contains argument on petitioner's appellate claim that his rights were violated by the trial court's admission of evidence of prior bad acts. ECF No. 18 at 22 et seq. (handwritten points and authorities); id. at 165-197 (reproduced appellate briefing). As noted above in the recitation of procedural history, the trial court permitted evidence of a 2007 fight between petitioner and his son Avery which ensued when petitioner threatened his son's mother. Further details of the issue are provided below in the excerpt of the California Court of Appeal's opinion.

B. The Clearly Established Federal Law

The admission of evidence is governed by state law, and habeas relief does not lie for errors of state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991). The erroneous admission of evidence violates due process, and thus supports federal habeas relief, only when it results in the denial of a fundamentally fair trial. Id. at 72. The Supreme Court has rejected the argument that due process necessarily requires the exclusion of prejudicial or unreliable evidence. See Spencer v. Texas, 385 U.S. 554, 563-564 (1967); Perry v. New Hampshire, 565 U.S. 228, 245 (2012).

C. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012). The California Court of Appeals ruled as follows:

> *Uncharged Misconduct Evidence*
>
> Defendant contends the trial court erroneously admitted defendant's 2007 incident with [Avery] Blount and Blount's mother as prior uncharged misconduct evidence. We agree but find the error to be harmless.
>
> The prosecution moved in limine to admit the prior incident to show motive and rebut self-defense. Defendant objected, claiming any inference of motive was speculative and the five-year span between the charged and uncharged offenses meant the prior

15

incident was not relevant to any claim of self-defense. At the in limine hearing, defendant also claimed the prior incident was inadmissible pursuant to Evidence Code section 352.

The Trial court ruled that the 2007 incident was admissible to show motive provided the prosecution establishes a proper foundation for the evidence. After [Avery] Blount testified that defendant told him, "he owes me for the last time," the prosecution elicited Blount's testimony describing the 2007 incident. At the next break, the prosecutor asked the court for a ruling on his request to admit the fact that defendant's conviction for criminal threats resulting from the 2007 incident. Defendant raised an Evidence Code section 352 objection. The trial court initially deferred ruling on the motion and later admitted the prior conviction over defendant's objection.

California law prohibits the introduction of evidence of uncharged action to prove a defendant's deposition or propensity to commit the crime charged. (Evid. Code, § 1101, subd. (a); People v. Guerrero (1976) 16 Cal.3d 719, 724.) However, "[n]othing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive….) other than his or her disposition to commit such an act." (Evid. Code, § 1101, subd. (b).)

"To be relevant, an uncharged offense must tend logically, naturally and by reasonable inference to prove issue(s) on which it is offered." (People v. Robbins (1988) 45 Cal.3d 867, 879). The trial court may admit such evidence in its discretion after weighing its probative value against its prejudicial effect. (People v. Daniels (1991) 52 Cal.3d 815, 856.) Consequently, a trial court's ruling admitting prior instances of misconduct is reviewed for abuse of discretion. (People v. Cole (2004) 33 Cal.4th 1158, 1195.)

Defendant claims that nexus between defendant's comment to Blount that he owed him for the "last time" and the 2007 incident was speculative. According to defendant, " '[l]ast time' could mean a myriad of incidents over the day, let alone the preceding five years." He argues that Blount's interpretation of defendant's statement is irrelevant, as it reflects Blount's state of mind rather than defendant's. Defendant further argues that the prior incident was not relevant, as the prosecutor argued to the jury that defendant was " 'spoiling for a fight' with anyone," and did not include the prior incident "when describing his theory of [defendant]'s motive of the day of the incident.'

The admissibility of other crimes evidence to prove motive depends on three principal factors: " '(1) the *materiality* of the fact sought to be proved or disproved; (2) the *tendency* of the uncharged crime to prove or disprove the material fact; and (3) the existence of any *rule* or *policy* requiring the exclusion of the relevant evidence.' " (*People v. Robbins*, supra, 45 Cal.3d at p. 879.)

As the prosecutor argued at trial, defendant was spoiling to fight that day. Defendant's initial challenge to fight Chin, his threats to

16

> Harris, his attack on his son Blount, and his eventual assault against Beckhorn shows that he was willing to fight *anyone* that day. In this context, defendant's motive to attack Blount is not material to proven the charged offense, the assault against Beckhorn, and the vandalism on his vehicle. Since the prior uncharged misconduct was not even marginally relevant to the charge at issue, the trial court erred in admitting it.
>
> Erroneously admitting evidence of prior charged misconduct is not prejudicial per se. We must determine whether the error was harmless under the standard of People v. Watson (1956) 46 Cal.2d 818 and People v. Carter (2005) 36 Cal.4th 1114, 1151, 1152.
>
> The evidence of defendant's guilt was overwhelming. Multiple eyewitnesses gave essentially consistent testimony painting defendant as someone ready to fight anyone. He eventually attacked Beckhorn with a golf club and then damaged Beckhorn's car with the same golf club. These accounts were corroborated by the deputy's testimony that Beckhorn was holding a bloody rag to his head and that defendant was agitated and intoxicated. The neighbor's 911 call reporting an argument, two loud cracks, and a man wielding a weapon with several other people trying to calm him down is further confirmation of the eyewitness accounts of defendant's felonious assault.
>
> In light of the compelling evidence of guilt, we conclude it is not reasonably probable defendant would have received a more favorable result at trial of the prior uncharged misconduct had not been admitted and the error was therefore harmless.

Lodged Doc. 12 at 3-6 (footnote omitted).

### D. Objective Reasonableness Under § 2254(d)

When a state court finds that a federal constitutional error was harmless, then the harmless error finding becomes the subject of review under § 2254(d). See Mitchell v. Esparza, 540 U.S. 12, 17-18 (2003) (per curiam); Fry v. Pliler, 551 U.S.112, 119 (2007). That principle does not apply here. The appellate court held that a violation of the California Evidence Code was harmless; this is a purely state law question that is not subject to review in federal habeas at all. See Estelle, 502 U.S. at 67; Lewis, 497 U.S. at 780.

Even if petitioner had argued on appeal that admission of the evidence violated his federal due process rights,[9] and that theory had been ignored by the state court or rejected without

---

[9] Appellant's Opening Brief, Lodged Doc. 8, argued the issue exclusively under the Evidence Code, without reference to due process. The petition for review, Lodged Doc. 13, also omits any constitutional argument. Accordingly, it does not appear that a federal constitutional claim was exhausted.

comment, federal habeas relief would be barred under AEDPA because no clearly established federal law provides that the admission of prejudicial evidence violates due process. Where no clearly established federal law supports petitioner's claim, the state court cannot have ruled unreasonably. See Wright, 552 U.S. at 125-26. Because the Supreme Court has never found due process violated by the admission and use of prejudicial evidence, including bad acts or propensity evidence, the Ninth Circuit has repeatedly rejected claims similar to the one presented here. See Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); Alberni v. McDaniel, 458 F.3d 860, 866 (9th Cir. 2006), cert. denied, 549 U.S. 1287 (2007). Relief is unavailable on this claim.

## CONCLUSION

IT IS HEREBY ORDERED that petitioner's request for a ruling, ECF No. 84, is GRANTED to the extent that the undersigned has now issued findings and recommendations.

For all the reasons explained above, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus and petitioner's motion for a stay under Rhines v. Weber, ECF No. 18, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 9, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE